**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MICHAEL CLARK,

Plaintiff,

v.

COUNTY OF TULARE, BILL WITTMAN,

Defendants.
______________________________________/

CASE NO. CV-F-09-2106 LJO JLT

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**

By notice filed on September 27, 2010, Defendants County of Tulare ("County") and Bill Wittman ("Wittman"), individually and in his official capacity as Tulare County Sheriff, move for summary judgment or in the alternative, summary adjudication against plaintiff Michael Clark. Plaintiff filed an opposition on October 18, 2010. Defendants filed a reply brief on October 27, 2010. The Court then asked for supplemental briefing on an evidentiary issue. Plaintiff filed his supplemental brief on November 1, 2010 and defendants filed their brief on November 12, 2010. Pursuant to Local Rule 230(g), this motion was submitted on the pleadings without oral argument, and the hearing was VACATED. Having considered the moving, opposition and reply papers, and the supplemental briefing, as well as the Court's file, the Court issues the following order.

**<u>FACTUAL BACKGROUND</u>**

This action alleges claims related to defamation arising from a police investigation of a shooting. Plaintiff is employed as a police officer in the City of Woodlake. As part of his duties he is the range

master for the police training shooting range. In early 2009, the Tulare County Sheriff's Department investigated the shooting of Mr. Leland Perryman. At the time of Mr. Perryman's shooting, several Officers from the City of Woodlake were practice shooting their firearms at the range, about a mile from where Mr. Perryman was shot. Plaintiff was on duty as the range master at the time of the training but was not discharging a firearm when Mr. Perryman was shot. Plaintiff was responsible for the set up of targets and for tracking the officers who participated in the exercise or who shot at the range. Behind the range is a residential area, located within the County of Tulare. Leland Perryman, with his wife, was walking in an orchard behind his house when he was hit by a bullet.

The Tulare County Sheriff's Office ("TCSO") began an investigation of the shooting, as did the City of Woodlake Police Department. Defendant Bill Wittman is the Sheriff for the County of Tulare. The TCSO completed a lengthy investigative report about the incident, which contained some personal and confidential information about plaintiff. For instance, the report lists the plaintiff's name, employer, date of birth, age, race, sex, height, weight, hair and eye color, date of birth, home address, driver's license number, home and cellular telephone number. Plaintiff alleges the report also falsely attributed fault for Mr. Perryman's shooting on Plaintiff, claiming that some of the targets had been placed on the wings of the range in a place that was inherently unsafe. The Tulare County District Attorney determined that no one should be prosecuted for the accidental shooting.

After the report was submitted to the Tulare County District Attorney's Office, the Visalia Times Delta published the report on its website, including plaintiff's and other individuals' personal information. Plaintiff alleges that the TCSO leaked the report to various news agencies which published Plaintiff's private information. This leak of the report and the publication are the basis of plaintiff's suit. Plaintiff alleges that there is animosity between the Chief of Police for the City of Woodlake, Chief Zapalac, and the Sheriff of the County of Tulare, Bill Wittman, as they were opposing candidates in the 2010 County of Tulare Sheriff election.

Plaintiff alleges the following causes of action:

1. Count One: First Amendment, Sixth Amendment and Fourteenth Amendment;
2. Count Two - Intentional Infliction of Emotional Distress;
3. Count Three - Negligence Infliction of Emotional Distress;

4. Count Four - Defamation;

5. Count Five - Invasion of Privacy;

6. Count Six - Violations of Gov. Code §6250;

7. Count Seven - Violations of Civ.Code §1798;

8. Count Eight - Violations of Penal Code §964.

## ANALYSIS AND DISCUSSION

### A. Summary Judgment/Adjudication Standards

#### 1. Burdens of Proof on Summary Judgment

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

Defendant's main argument for challenging each of plaintiff's causes of action is that plaintiff lacks evidence. A defense motion for summary judgment may be based on the ground that plaintiff has no admissible evidence to support one or more essential elements of the claim. "It is not enough to move for summary judgment ... with a conclusory assertion that the (opposing party) has no evidence to prove his case." *Celotex Corp. v. Catrett*, 477 U.S. at 326, 106 S.Ct. at 2555 (J. White, concur. opn.) (parentheses added). "(T)he Celotex 'showing' can be made by pointing out through argument—the absence of evidence to support plaintiff's claim." Devereaux v. Abbey 263 F3d 1070, 1076 (9th Cir. 2001) (en banc). Thus, in this Circuit, argument that the non-moving party lacks evidence is sufficient to carry the moving party's burden of proof.

**2. Admissibility of Evidence**

Defendants argue that the primary evidence plaintiff relies upon to oppose the motion is inadmissible hearsay. In plaintiff's opposition, he submitted the declaration of his attorney, Mr. Magwood, who testified as to two areas: (1) identifying potential witnesses and what the anticipated testimony from these witnesses will show, and (2) attaching and authenticating documentary evidence,

such as email correspondence, letters, and memoranda produced by defendants in discovery.[1] (Doc. 24-3, Magwood Decl.) Mr. Magwood's declaration states that his office conducted an investigation with witnesses. He then recounts what the witnesses are expected to testify to at trial. As to the documents, Mr. Magwood's declaration states that certain documents were produced by defendants, and "true and correct copies" are attached to his declaration.

Defendants objected to the admissibility of this evidence in Mr. Magwood's declaration. As a result, the Court asked for supplemental briefing on the admissibility of the evidence submitted by plaintiff in his attorney's declaration.

(a) Form v. Substance of Declaration

In responding to defendants' objections, plaintiff argues that the seminal case of *Celotex* does not require plaintiff provide "admissible evidence" to defeat a motion. Plaintiff argues "the *Celotex* court noted that in opposing the motion, the non-moving plaintiff need not provide 'admissible evidence' to defeat the motion." (Doc. 27, Supplemental Brief p.2.)

Contrary to plaintiff's argument, the evidence on which the opponent relies must be admissible at trial. But the evidence need not be in an admissible form as presented in the opposition. A party may present testimony of its own witnesses by declarations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991), *cert. denied*, 113 S.Ct. 460 (1992). At the summary judgment stage, courts focus on admissibility of the evidence's content, not its form. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. At 2553 (opposing party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment"). The Court in *Celotex* dealt with the form of the evidence submitted in opposition to a motion. The Court held that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." 477 U.S. at 324 (emphasis added).[2] A party must show that the

[1] Plaintiff also submitted his declaration in support of the motion. His declaration is not subject to the objections.

[2] In *Celotex*, plaintiff produced three documents which she claimed "demonstrate that there is a genuine material factual dispute" as to whether the decedent had ever been exposed to defendant's asbestos products. The three documents included a transcript of a deposition of the decedent, a letter from an official of one of the decedent's former employers whom plaintiff planned to call as a trial witness, and a letter from an insurance company to respondent's attorney, all tending to establish that the decedent had been exposed to defendant's asbestos products in Chicago during 1970-1971. Defendant, in

evidence could be rendered in an admissible form at trial. *Celotex*, 477 U.S. 317, *decision after remand*, *Catrett v. Johns-Manville Sales Corp.* 826 F.2d 33, 37 (D.C. Cir. 1987). Thus, the substance of the evidence must be admissible, but the form of the evidence does not.

(b) <u>The Substance of the Declaration is Inadmissible</u>

An attorney may submit a declaration as evidence to a motion for summary judgment. However, the declaration must be made upon personal knowledge and sets forth fact that would admissible in evidence if the attorney were testifying at trial. See Fed.R.Civ.P. 56(e). A "hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit." *See*, *e.g.*, *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2nd Cir. 1999). An affidavit shall "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

Here, Mr. Magwood's declaration states the "anticipated testimony" from numerous witnesses. He states what each witness is expected to testify to at trial.

This declaration is not made upon his personal knowledge. The substance of his declaration is classic hearsay. See Fed.R.Evid. 801(c). Mr. Magwood bases his knowledge upon an investigation conducted by his office and upon what he was told as to the anticipated testimony for each witness. An attorney is not competent to testify as to what another individual is expected to say under oath.

Plaintiff, nonetheless, argues that he is entitled to introduce an attorney's affidavit of anticipated testimony because the "form" is permissible. Plaintiff argues that in *Celotex*, after remand, the Court of Appeal held that the letter and the intention to call the author of the letter at trial were sufficient to create an issue of triable fact as to decedent's exposure. *See Catrett v. Johns-Manville Sales Corporation*, 826 F.2d 33 (DC Cir. 1987), *cert. denied*, 484 U.S. 1066 (1988). On remand, however, the issue was <u>not</u> an attorney declaration stating what a witness' anticipated testimony would be or

---

turn, argued that the three documents were inadmissible hearsay and thus could not be considered in opposition to the summary judgment motion. The court held that the "form" of the evidence was not inadmissible hearsay. The court then remanded for determination of whether the substance of the evidence was admissible.

authenticating documents for which the attorney did not have personal knowledge. On remand, the issue was the admissibility of documents to which, significantly, defendant did not object.

Plaintiff has not cited controlling authority in which an attorney's declaration stating what another witness will testify to and authenticating documents, has been held admissible. Declarations by attorneys are sufficient only if the facts stated are matters of which the attorney has knowledge, such as matters occurring during the course of the lawsuit, such as authenticity of a deposition transcript. Attorney affidavits made on information and belief do not satisfy the summary judgment procedural requirements. See e.g., *Rountree v. Fairfax County School Bd.*, 933 F.2d 219, 223 (4th Cir. 1991); *Estremera v. United States*, 442 F.3d 580, 584–585 (7th Cir. 2006) (attorney's affidavit based upon interviews with witnesses and review of documents is "second-hand knowledge," insufficient to create dispute of material facts).

The Court finds that an attorney's declaration must be made upon personal knowledge. To hold otherwise would ignore the evidentiary rules of hearsay. Accepting plaintiff's argument, an attorney would be able to testify in any case as to what the attorney anticipated another person would say. This "form" of evidence was not considered by *Celotex,* and would negate Rule 56(e) which requires personal knowledge and competency to testify on the evidence.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir.1988). Rule 56(c) of the Federal Rules of Civil Procedure provides that a reviewing court may consider "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine issue as to a material fact. Neither *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) nor *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir.1991) eliminated the requirement that a foundation must be presented to demonstrate the authenticity of a proffered evidence.

Plaintiff argues that the exhibits to counsel's declaration, Items 1a - n, are documents produced by Defendants illustrating that none of the County deputies or personnel released the report, and that only three senior officers had access to the report. The only foundation laid for these documents, however, is through the attorney's declaration, that the documents were produced in discovery. The

Ninth Circuit "has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1987). Documentary evidence must be properly authenticated for use in a motion for summary judgment. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). Here, the documentary evidence attached as exhibits, the email correspondence, letters and memoranda, are not properly authenticated.[3] Accordingly, the documents are inadmissible.

**B. Count One - 42 U.S.C. §1983**

Plaintiff's first count against the County and Sheriff Wittman is for violation of his civil rights pursuant to 42 U.S.C. §1983. "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.

**1. *Monell* liability**

The First Cause of Action is for violation of Civil Rights, 42 U.S.C. §1983, for deprivation the First Amendment, Sixth Amendment and Fourteenth Amendment.

A local government unit may not be held liable for the acts of its employees under a respondeat

---

[3] Additionally, plaintiff does not overcome hearsay of the documents.

superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

"In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). A local government entity may be liable under section 1983 "if its deliberate policy caused the constitutional violation alleged." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

**2. Overview of Supervisor Liability**

Plaintiff seeks to hold defendant Bill Wittman liable for §1983 violations under a theory of supervisor liability.

A supervisory official may be liable under §1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir.1991)), *cert. denied,* 502 U.S. 1074 (1992); *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (same). Supervisors can be held liable for (a) their own culpable action or inaction in the training, supervision, or control of subordinates; (b) their acquiescence in the constitutional deprivation

of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others. *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Under no circumstances, however, is there *respondeat superior* liability under §1983; that is, there is no liability under §1983 solely because one is responsible for the actions or omissions of another. *Redman v. County of San Diego*, 942 F.2d at 1446. A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff seeks to hold Sheriff Wittman liable for constitutional violations related to the release of the report: "Defendant Wittman may be held liable as a supervisor if he aided or encouraged the leak of the report."

**3. Summary of the Parties' Arguments**

Defendants argue there is no evidence that plaintiff was deprived of a constitutional or federal statutory right arising from the leak of the report. Defendants argues that there is no evidence that supports a First Amendment claim. Defendants argue that there are no factual allegation in the complaint to support a cause of action based upon either the Sixth or Fourteenth Amendment.[4]

Plaintiff argues that he seeks to hold Sheriff Wittman liable as a supervisor, because he aided and encouraged the leak of the report. (Doc. 24, Opposition p. 13.) Plaintiff argues that there is circumstantial evidence Wittman was involved. Plaintiff argues that the report had a tracking number to track a release through authorized channels. TCSO had restricted access to certain senior officers, and each was under command of Wittman. Plaintiff presents evidence that the report did not have a tracking number, which indicates that it did not come from an authorized channel. This suggests the report was printed outside authorized channels. Plaintiff argues that because the report was so restricted, only a senior official could have released the report. The released report had already been returned to TCSO because it had the DA's cover sheet addressed to TCSO on top of it. Defendant Wittman was one of only a few people who had access to the report. Defendant Wittman had a political rivalry with Chief

[4] Defendants also argue that the §1983 claims fails because defendants were not plaintiff's employer. This argument is irrelevant to plaintiff's claims and therefore, the Court does not address it.

Zapalac, and the section regarding Chief Zapalac's perceived lack of cooperation was highlighted in the released report.

**4. Alleged First Amendment**

Plaintiff argues that the First Amendment protects his right to refuse to speak, citing *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Plaintiff argues that TCSO attempted to coerce plaintiff to speak with them during the investigation and he refused.

In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Environmental Center v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir. 1999). Intent to inhibit speech "is an element of the claim." *Id.* at 1301. The goal is to prevent, or redress, actions by a government official that chill the exercise of protected First Amendment rights. *Coszalter v. City of Salem*, 320 F.3d 968, 974-75 (9th Cir.2003).

The First Amendment also confers a "right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969). The First Amendment prohibits the government from compelling citizens to express beliefs that they do not hold. *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (preventing a state government from forcing children to salute the American flag when the children's religious beliefs forbade such behavior). "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428 (1977) (forbidding a state government from compelling motorists to display the message "live free or die" on their license plates).

Here, the facts do not suggest that plaintiff was coerced into expressing a belief he did not hold or that he was "chilled" in his political speech. The case cited by plaintiff, in *West Virginia State Bd. of Educ. v. Barnette*, is not applicable because there is no evidence plaintiff was coerced or forced into expressing any belief. The facts of this case do not fall within the parameters of the First Amendment

protections stated in *West Virginia State Bd. of Educ. v. Barnette.* Plaintiff claims is a "right to refuse to speak," but the First Amendment protects against coercing an expression of a belief or political speech, not the "right to refuse to speak." As this "right to refuse to speak" is the only right plaintiff asserts under the First Amendment, the motion for summary adjudication on the First Amendment will be granted.

**5. Fourteenth Amendment**

Plaintiff argues that the protections of the Fourteenth Amendment were violated. He argues he had the right to refuse to cooperate with TCSO without fear of reprisal, citing *Garrity v. State of N.J.,* 385 U.S. 493, 87 S.Ct. 616 (1967). Plaintiff argues he had the right not to cooperate with the investigation and the right to an attorney.

In *Garrity*, police officers were investigated for allegedly "fixing" traffic tickets. *Id.* at 494, 87 S.Ct. 616. Before being questioned, each officer was told that anything he said could be used against him and that he had the right to refuse to answer any question, but if he refused to answer he would be fired. *Id.* The answers to the questions subsequently were used to convict a number of police officers. Id. at 495, 87 S.Ct. 616. The Supreme Court held that the Fourteenth Amendment was violated:

> [t]he choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in Miranda v. State of Arizona, 384 U.S. 436, 464-65, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694, is likely to exert such pressure upon an individual as to disable him from making a free and rational choice.

*Id.* at 497, 87 S.Ct. 616. As a remedy, the Court held the state cannot use the incriminatory statement of an employee secured under threat of job loss in a subsequent criminal proceeding. The protection against coerced statements extends to public employees who must choose either to incriminate themselves or to forfeit their jobs during an administrative hearing.

Plaintiff does not allege or present evidence comparable to the facts in *Garrity.* He does not introduce evidence that he was threatened with any kind of detriment for failure to cooperate. The evidence he presents is that he was told not to cooperate by his superiors, he so informed TCSO that he would not cooperate, but no further evidence of threats or detriment occurred:

> 44. TCSO detectives claimed they were seeking further answers

about the shooting of Mr. Perryman.

45. I advised that I was not to be giving any further statements unless it was with the cooperation of my department and the assistance of counsel because of the potential civil action by Mr. Perryman.

46. I advised that I wanted to cooperate, but wanted to make sure everything was on the "up and up."

47. I also told the detectives that I could not make these decisions but that they needed to be worked out between my command and TCSO's command.

48. I intended this information to be used to resolve any coordination issues between TCSO and my department.

(Doc. 24-1, Clark Decl. ¶44-48.)

Plaintiff has not introduced evidence that he was threatened by the TCSO or his own office to cooperate. Plaintiff does not introduce evidence he was under oath or faced a choice of cooperating or losing his job.

Plaintiff argues that his due process rights were violation because:

> "Should he stray toward cooperation with TCSO, he risks being faced with insubordination charges from his own department, as well as criminal charges instigated by TCSO. On the other hand, if stray toward refusal of cooperation, he risks humiliation at the hands of Defendants." (Doc. 24, Opposition p. 17.)

Plaintiff's argument, however, is pure speculation on potential violation of right. The evidence is lacking that plaintiff faced insubordination charges in his department, or that he faced criminal charges for failing to cooperate or any kind of detriment. He offers no such evidence. In short, plaintiff has failed to introduce evidence of a violation of his due process rights from the investigation.

Plaintiff also argues that his rights in being given *Miranda* warnings were violated. In *California Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039 (9th Cir. 1999), *cert. denied*, 530 U.S. 1261 (2000), the court ruled that the plaintiffs stated a § 1983 Fifth Amendment cause of action when they claimed that they were the victims of a policy of the defendant police to defy the requirements of *Miranda*. In *Butts*, plaintiffs sued the City of Los Angeles and individual officers for an alleged policy, set forth in certain training programs and materials, which authorized continued interrogation "outside Miranda " despite the suspects' invocation of their right to remain silent and their requests for an attorney. The policy was based on the position that the coerced statements could be used at impeachment

at trial. The plaintiffs alleged that the defendants used coercion and intimidation to obtain incriminating statements. In *Butts*, the court denied qualified immunity to officers who had intentionally violated the suspects' Miranda rights, in accordance with their training and departmental policy. The court stated, "Officers who intentionally violate the rights protected by *Miranda* must expect to have to defend themselves in civil actions." *Butts*, 195 F.3d at 1050.

Here, unlike *Butts,* plaintiff has not introduced any policy, custom or practice by the County for violation of *Miranda* warnings. In *Butts,* the police department had training materials which authorized violation of *Miranda*. Here, plaintiff does not introduce evidence of any custom, policy or practice established by the County of violating *Miranda* rights.

Further, the officers who violated the *Miranda* warnings in *Butts* were parties to the §1983, whereas, here, the officers who were plaintiff's interrogators are not defendants. Here, the sole individual defendant is Sheriff Wittman. Plaintiff has not introduced evidence that Sheriff Wittman was an interrogator or should be responsible under supervisor liability. Thus, plaintiff has failed to introduce a policy, custom or practice by the County which violated his rights, and plaintiff has failed to introduce evidence that Wittman was responsible such that Wittman could be personally liable. Plaintiff has failed to raise an issue of fact that his Fifth and Fourteenth amendment rights were violated in the interrogation.

**6. Sixth Amendment**

Plaintiff argues that his Sixth Amendment right to counsel had been violated.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S.C. Const. Amend. VI.

The deliberate denial of counsel, absent an intelligent and voluntary waiver, is a deprivation of rights guaranteed by the Sixth and Fourteenth Amendments. *See Robichaud v. Ronan*, 351 F.2d 533 (9th Cir. 1965). But, actual injury is required to state a claim. *See generally*, *Weatherford v. Bursey*, 429 U.S. 545, 554, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) (rejecting a per se rule in a criminal case of a

violation of the Sixth Amendment).

Here, as in the *Miranda* warnings violation, plaintiff has not introduced any policy, custom or practice by the County for the alleged violation or that the alleged violation causes harm. Plaintiff has failed to introduce evidence that defendant Wittman engaged in any wrongdoing.

**7. Immunity**

In their reply papers, defendants for the first time raise the issue of "immunity." (Doc. 25, Reply p. 5-9.)

Reply papers should be limited to matters raised in the opposition papers. It is improper for the moving party to "shift gears" and introduce new facts or different legal arguments in the reply brief than presented in the moving papers. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 894–895, 110 S.Ct. 3177, 3192 (1990) (court has discretion to disregard late-filed factual matters); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("district court need not consider arguments raised for the first time in a reply brief"); *see also Ojo v. Farmers Group, Inc.,* 565 F3d 1175, 1186, fn. 12 (9th Cir. 2009).

Here, defendants have raised a new and different issue which was not briefed in their moving papers nor raised in the opposition. Accordingly, the Court will not consider the issue of immunity as it has been raised improperly in the reply papers.

**C. Count Two - Intentional Infliction of Emotional Distress**

Defendants argue that there is no evidence of extreme and outrageous conduct by Sheriff Wittman, any member of the Sheriff's Department or by an agent of the county directed to plaintiff. (Doc. 22, P&a pp. 10.)

Plaintiff argues that there are facts to support a claim for intentional infliction. Plaintiff argues that his private information as released to the news media and was republished elsewhere. Plaintiff argues this was "outrageous" conduct because defendants abused a position of power to damage the plaintiff's interests. (Doc. 24, Opposition 17-18.) Defendants released the information knowing plaintiff was police officer who would be concerned about his privacy.

The elements of a prima facie case of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) actual

and proximate causation of the emotional distress by the defendants' outrageous conduct. *Cervantez v. J. C. Penney Co.*, 24 Cal.3d 579, 583, 156 Cal.Rptr. 198 (1979), *superseded by statute as stated in Melendez v. City of Los Angeles*, 63 Cal.App.4th 1, 73 Cal.Rptr.2d 469 (1998). To satisfy the element of "extreme and outrageous conduct," plaintiff must allege facts showing that defendants' conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 886, 895, 183 Cal.Rptr. 502 (1982). Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous. *Berkley v. Dowds*, 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304, 317 (2007). While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338, 340 (1989) (no outrageous conduct on allegations that the employer had presented the employee with a termination package, but later withdrew it and kept her as an employee.) In *Ricard v. Pacific Indemnity Co.*, plaintiff alleged that he suffered severe emotional distress based on defendants' alleged refusal to timely pay a claim for insurance benefits. The trial court granted a demurrer to the cause of action because of the failure to allege "extreme and outrageous conduct." The appellate court affirmed that a court may decide, as a matter of law, whether a defendant's conduct, as pleaded, could be deemed "outrageous" within that definition. *Ricard*, 132 Cal.App.3d at 895.

Plaintiff argues that the defendants conduct was extreme and outrageous because they "abused a relation or position of power over him." Plaintiff argues that defendants caused the release, or released, plaintiff's personal information. (Doc. 24, Opposition p.18.)

Behavior may be considered "outrageous" if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress...." *Molko v. Holy Spirit Assn*, 46 Cal.3d 1092, 762 P.2d 46 (1988).

The abuse of a position of power has been applied in limited situations. See Restatement Second of Torts (1965) § 46, pp. 71-80. Comment e. to §46 provides, "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." The few cases which have held a person "holds a position of authority" over another, such that a claims for IIED may exist is for an employment relationship, (*Agarwal v. Johnson,* 25 Cal.3d 932, 946 (1979) (employer used racial epithets); *Lagies v. Copley*, 110 Cal.App.3d 958 (1980) (reporter and newspaper employment relationship), *disapproved on diff. grounds*, *Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 738, 257 Cal.Rptr. 708 (1989)); between a church and its member, *(Molko v. Holy Spirit Assn*, 46 Cal.3d 1092); and, between a landlord who wrongfully evicts a tenant. *Emden v. Vitz*, 88 Cal.App.2d 313 (1948); *Kiseskey v. Carpenters' Trust*, 144 Cal.App.3d 222, 229, 192 Cal.Rptr. 492, 496 (1983) (profanity and threat to life and safety of family supports outrageous conduct finding). A special relationship may exist between a debt collector and a debtor. *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, 9 (E.D.Cal. 2009) (Defendant engaged in extreme and outrageous conduct including abusing his position of authority as a debt collector to harass, lie and intimidate Plaintiff).

Plaintiff has not cited any authority that a special relationship exists between a witness in a police investigation and the police department. Indeed, for tort purposes, police officers are held not to be a special relationship with witnesses. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1129 (2002) (county was not liable for failing to protect a litigant from a violent attack by her husband in a courthouse because there was no such special relationship). Disclosing private information of a witness may violate certain other statutory protections, see *infra*, but such disclosure has not been held to be "extreme and outrageous," abusing a special relationship, to support a common law tort claim. Accordingly, summary adjudication is appropriate for this cause of action.

**D. Count Three - Negligent Infliction of Emotional Distress**

Defendants argue that there is no permissible basis for a negligent infliction of emotional distress claim because there are no facts to support that defendants owed a duty of care in "pre-existing relationship."

Plaintiff argues that this cause of action arises from a breach of duty from a preexisting

relationship, citing *Burgess v. Superior Court*, 2 Cal.4th 1065, 1076 (1992). Plaintiff argues that the duty is a law enforcement agency to a witness in the investigation. "Negligent infliction emotional distress is not an independent tort in California, but the tort of negligence with the traditional elements of duty, breach of duty, causation, and damages." *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992). The California Supreme Court has allowed recovery for negligent infliction of emotional distress for "serious emotional distress ... [caused by] a breach of duty owed to the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' " *Burgess v. Superior Court*, 2 Cal.4th 1064, 1073, 9 Cal.Rptr.2d 615 (1992). There are several types of relationships for which the California courts have found a special duty of care arises, none that the court was able to find apply to a simple witness-police relationship. *See, e.g.*, *Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615 (1992) (physician-patient relationship); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 592, 257 Cal.Rptr. 98, 770 P.2d 278 (1989) (psychotherapist-patient relationship); and *Christensen v. Superior Court*, 54 Cal.3d 868, 890, 2 Cal.Rptr.2d 79 (1991) (relationship between mortuary and close relatives of decedent for whose benefit the mortuary was to provide funeral services).

Thus, as there is no authority that a special relationship exists between a witness to an investigation and the police department, a duty of care does not arise. Accordingly, the motion will be granted for the negligent infliction of emotional distress.

**E. Count Four - Defamation**

Defendants argue that there is no issue of fact on the element of "falsity" of the statement alleged to be defamatory. Defendants argue the "falsity" is the placement of the shooting targets in an unsafe location on the range. This is not "false," and is a statement of opinion by Sheriff investigators. The placement of the targets in an "unsafe location" is a statement of opinion and not an assertion of false facts.[5] Defendants also argue that Plaintiff is a public figure.

Plaintiff argues that he is not a "public figure."' He was a witness in a police investigation, which does not convert him to a public figure. Plaintiff argues that the report, which was published,

[5] Defendants do not argue in their moving papers that the statements were privileged under Cal.Civ.Code §47(c) or any other privilege.

contained false information. Plaintiff argues:

> "In one section of the report a very detailed diagram of the range is reproduced with the placement of targets noted on the diagram. The location of the targets on the diagram is in direct line with where the victim was found and it is reported that is where Plaintiff said the targets had been placed. (AMF-52, 54.) Unfortunately, the TCSO positioned the targets improperly by several feet. (AMF-54, 55.) Only TCSO had access to the range during the investigation. A difference of a few feet makes all the difference in whether or not the location of the targets was appropriate, especially at a distance of half a mile. If the targets were located at location A, but the TCSO report places them at location B, an arguably unsafe position, that implicates Plaintiff's job functions as range master, and are thereby defamatory." (Doc. 24, Opposition p. 19.)

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. Cal.Civ.Code §§ 45, 46; *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

An essential element of defamation is that the alleged false statement be one of <u>fact</u> rather than opinion. *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 600 (1976); *Campanelli v. Regents of University of California*, 44 Cal.App.4th 572, 578 (1996). In drawing the distinction between opinion and fact, the courts look to totality of the circumstances, putting ourselves in the place of an "average reader" and deciding the "natural and probable effect" of the statement. *Hofmann Co. v. E.I. Du Pont de Nemours & Co.*, 202 Cal.App.3d 390, 398 (1988). The words themselves must be examined to see if they have a defamatory meaning, or if the gist of the statements has a defamatory meaning. *Id.* In deciding whether a statement is defamatory, one must consider that which is explicitly stated as well as that which is insinuated or implied. *Forsher v. Bugliosi*, 26 Cal.3d 792, 803 (1980). A court examines the totality of the circumstances, beginning with the language of the statement itself and then considering the context in which the statement was made. *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 260-261 (1986), *cert. denied*, 479 U.S. 1032 (1987).

Considering the totality of the circumstances, there is a issue of fact as to whether the report contained a defamatory statement. The evidence shows that the investigation concluded that the range target had been placed in an "unsafe" location. The term "unsafe" may have contours of opinion, but gauged under police standards, such as POST, what is "unsafe" may not be a matter of opinion. Considering that an individual was shot as a result of what the report states is "unsafe," there is an issue

of fact whether the statement has a defamatory meaning. Here, all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 US 451, 456, 112 S.Ct. 2072, 2077 (1992). Accordingly, plaintiff as raised an issue of fact as to the existence of a defamatory statement.

**F. Count Five - Invasion of Privacy and False Light Publication**

Plaintiff claims two types of invasion of privacy: public disclosure of private facts and false light publication.

Defendants argue that the invasion of privacy (public disclosure of private facts) does not have evidence "connecting the publication to the Defendants." (Doc. 22, Motion p. 14.) Defendants acknowledge that although plaintiff's personal information was posted on the internet, that public disclosure was not committed by defendants. Defendants also argue that the false light publication invasion of privacy is not actionable because there was no "false light." The information posted on the internet did not place plaintiff in a false light.

Plaintiff argues that the report went from the County to a news agency and that publication is sufficient to support invasion of privacy.

**1. Public Disclosure of Private Information**

One of plaintiff's claims for invasion of privacy is based upon public disclosure of private facts. The elements of a claim of invasion of privacy based on the public disclosure of private facts are as follows: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. *Catsouras v. Department of California Highway Patrol*, 181 Cal.App.4th 856, 868, 104 Cal.Rptr.3d 352, 361 (2010).[6]

The only evidence that plaintiff produced to support that the disclosure was committed by these defendants is the declaration of Mr. Magwood. He states he conducted an investigation and talked with witnesses who will testify, "Mr. David Castellon, reporter for the Visalia Times-Delta, who is expected

---

[6] Four distinct kinds of activities have been found to violate this privacy protection and give rise to tort liability. These activities are: (1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness. *Moreno v. Hanford Sentinel, Inc.*, 172 Cal.App.4th 1125, 1129, 91 Cal.Rptr.3d 858, 862 (2009).

to testify that he received the report from a 'Senior County Official.'" (Doc. 24, Magwood decl, ¶ 31.) Plaintiff's sole evidence that the disclosure came from defendants is Mr. Magwood's hearsay evidence that a news reporter will say that he obtained a copy of the report from a "senior county official."

Here, the attorney's affidavit is not made upon personal knowedge. He bases his knowledge upon an investigation and purported anticipated testimony. An attorney is not competent to testify as to what another individual is expected to say under oath. There is no deposition testimony or declaration from the news reporter that the disclosure of the report to the news agency was from a "senior county official." As stated above, the attorney's affidavit shall "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). As this court has found that a declaration by an attorney is sufficient only if the facts stated are matters of which the attorney has personal knowledge, and there are no facts which support that Mr. Magwood has personal knowledge, this evidence is inadmissible. Accordingly, plaintiff has failed to carry his burden to raise an issue of fact that the County is responsible for the disclosure.

**2. False Light**

Defendant argues that the false light invasion of privacy claim should fail because there is no evidence that (1) any facts made public were false, (2) defendants place plaintiff in a false light, or (3) defendant acted with malice. (Doc. 22, Moving papers p. 15.)

Plaintiff does not specifically address the false light argument in his Opposition. (Doc. 24, Opposition p. 21-22.)

To prevail on a false light invasion of privacy claim, a plaintiff must show that the defendant made statements placing her in a false light that would be highly offensive to a reasonable person. *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 238-239, 228 Cal.Rptr. 215 (1986); *see also M.G. v. Time Warner, Inc.*, 89 Cal.App.4th 612, 636, 107 Cal.Rptr.2d 504 (a false light invasion of privacy claim "exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such").

Here, plaintiff has not introduced evidence from which a reasonable trier of fact could conclude that defendants disclosed the information in the report. Thus, there is no evidence which shows

defendants made a fact public which placed plaintiff in a false light. While there is evidence that the report targets were place in an unsafe position, implying plaintiff was conducting target practice in an improper manner, and impinging his professional reputation, there is no admissible evidence that defendants disclosed the report.

**G. Count Six - Violation of Gov.Code §6250**

The Sixth Cause of Action is for violation of the Public Records Act, Gov. Code §6250 et seq.

Defendants argue that under the Public Records Act, all public documents are subject to disclosure unless the Sheriff's Department asserts a privilege not to disclose an investigative report. Defendant argues that the information contained within investigative reports concerning witnesses is not confidential, and there is no evidence that this report was prohibited from disclosure.

Plaintiff argues that the disclosure of Plaintiff's private information is protected under law. Disclosure is prohibited by Penal Code §§964, 832.5, and 832.7. Plaintiff argues that the County refused to disclose the report to others, itself claiming exemption from the Public Records Act, yet the report ended up on the internet.

The California Public Records Act ("CPRA," Gov.Code § 6250 et seq.) permits anyone to obtain, subject to certain exemptions, "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." Gov.Code § 6252(e). CPRA specifically exempts from disclosure matters that would constitute an "unwarranted invasion of personal privacy" and matters privileged under federal or state law. Gov.Code § 6254(c),(k); Weil & Brown, *Cal. Prac. Guide: Civ, Proc. Before Trial* (The Rutter Group) §8:1805.18 et seq. Police officer personnel records fall within this exemption and therefore are not subject to disclosure under the CPRA. They are protected from disclosure in civil or criminal proceedings by Pen.Code § 832.7. Penal Code §832.7 provides that information contained in a peace officer's or custodial officer's personnel file is protected from discovery or disclosure. The protection extends to any information of a private nature, including information concerning the officer personally, such as home address, marital status, education and employment history. See Pen.Code §§ 832.7(a).

The motion challenges whether the information which was disclosed was privileged such that disclosure violated the police officer's confidential information. Plaintiff presents evidence that the

disclosure included private personal information which is protected under statutory provision of the Penal Code. Thus, plaintiff has raised an issue of fact that whether the CPRA has been violated.

Defendant also argues that the motion should be granted because the disclosure was by the news media, not by defendants. Here, as in the prior causes of action, plaintiff has not introduced evidence from which a reasonable trier of fact could conclude that defendants disclosed the information in the report. Accordingly, there is no evidence from which a reasonable trier of fact could conclude that the information disclosed came from the investigators of the incident.

**H. Count Seven - Violation of Civ.Code §1798 (Information Practices Act)**

Defendants argue that this statute does not apply to a local agency, and only applies to state agencies.

Plaintiff argues that Section 1798.82 permits the Act to apply to "persons." The statute applies, notwithstanding that it is generally applicable to state agencies, because it also applies to any "person."

The Information Practices Act is limited to "state" agencies. The Information Practices Act defines the term "agency" as "every state office, officer, department, division, bureau, board, commission, or other state agency" and does not include any "local agency." Cal.Civ.Code §1798.3(b). Therefore, the County cannot be liable under this section.

Civ.Code §1798.82 requires certain persons to provide notification if security systems are breached:

> "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal.Civ.Code §1798.82(b).

Plaintiff argues that Sheriff Whitman is a person who maintains the computerized data, in his official capacity as Sheriff-Coroner. Plaintiff argues that Sheriff Whitman had an obligation to report to plaintiff the release of plaintiff's private information.

Plaintiff has failed to present evidence that Sheriff Whitman, in his official capacity, maintains the computerized system. Plaintiff has not presented any authority for the proposition that the Sheriff is responsible for all information maintained on County computerized systems. Plaintiff has not

presented evidence of how the information is maintained, who inputs the information, the Sheriff's job description or in any manner "linking" Sheriff Whitman to "maintaining" the computer system. Plaintiff merely makes a broad argument that Sheriff Whitman in his official capacity "maintains" all computerized information. Plaintiff did not cite, and the Court's research did not locate any state authority interpreting this provision. *Accord Parke v. Cardsystems Solutions, Inc.*, 2006 WL 2917604, 4 (N.D.Cal. 2006) (There appears to be no reported appellate decisions interpreting these code provisions.) Therefore, as there is no evidence from which a reasonable jury could conclude that Sheriff Wittman maintains the computer systems, he is not liable under this code section.

**I. Count Eight - Violation of Penal Code §964**

Defendants argue that Penal Code §964 is inapplicable because it requires a district attorney and the Court to establish a procedure to protect confidential information about a witness if the report is submitted to the Court. This statute does not apply to the relevant facts.

Plaintiff argues that he was a witness in a police investigation and that "it would make no sense for the report to only be confidential when it is submitted to the court, but not prior to trial." (Doc. 24, Opposition p. 24.)

The duty to safeguard confidential informants' identities is established by Penal Code §964 (a). Pen. Code § 964 requires the district attorney and the courts in each county to establish a mutually agreeable procedure to protect confidential personal information regarding any witness or victim contained in a police report, arrest report, or investigative report that is submitted to a court by a prosecutor in support of an accusatory pleading or in support of a search or arrest warrant. The statute requires a confidential procedure for a "report[] submitted to a court."

This statute is inapplicable to the current case. The investigative report was not submitted to Court. There is no evidence that disclosure of the report was filed with the court. There is no evidence that procedures developed for confidential submission to Court were violated. Thus, the facts of this case do not fall within the mandate of Penal Code §964.

Plaintiff argues that an issue of fact arises because it is a disputed whether the statute only applies to reports <u>submitted</u> to a court. (Doc. 24, Opposition p. 23-24.)

To the contrary, there is no factual dispute. Statutory interpretation is a question of law. *Day*

*v. Apoliona*, 616 F.3d 918, 924 (9th Cir. 2010); *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) (per curiam) ("questions of law" include "not only 'pure' issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact."). The cause of action will be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court partially GRANTS and partially DENIES the motion for summary judgment, or in the alternative summary adjudication, as follows:

1. GRANTS the motion as to County One for violation of 42 U.S.C. §1983;
2. GRANTS the motion as to Count Two for Intentional Infliction of Emotional Distress;
3. GRANTS the motion as to Count Three for Negligent Infliction of Emotional Distress;
4. DENIES the motion as to Count Four for Defamation;
5. GRANTS the motion as to Count Five for Invasion of Privacy and False Light Publication;
6. GRANTS the motion as to Count Six for Violation of Gov.Code §6250;
7. GRANTS the motion as to Count Seven for Violation of Civ.Code §1798 (Information Practices Act);
8. GRANTS the motion as to Count Eight for Violation of Penal Code §964.

IT IS SO ORDERED.

**Dated: November 17, 2010** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE